IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03063

BRIAN PAUL BOUCHARD and MILENA QUEIROZ BOUCHARD,

    Plaintiffs,

v.

CSAA GENERAL INSURANCE COMPANY d/b/a AAA INSURANCE,

    Defendant.

## COMPLAINT

Plaintiffs Brian Paul Bouchard ("Mr. Bouchard") and Milena Queiroz Bouchard ("Ms. Bouchard") (together, "Plaintiffs"), through their counsel, respectfully plead their Complaint against Defendant CSAA General Insurance Company ("Defendant"). Pursuant to the Seventh Amendment to the United States Constitution, Plaintiffs demand a trial by jury.

## JURISDICTION

1. Plaintiffs are domiciled in Boulder County, Colorado. Plaintiffs are citizens of Colorado.

2. Defendant is an Indiana corporation with a principal place of business in Hamilton County, Indiana. Defendant is a citizen of Indiana.

3. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See infra* ¶ 80.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

1

5. This Court has personal jurisdiction over Defendant because it issued the subject insurance policy in Colorado, and the insured property is located in Colorado.

6. Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Colorado, and the insured property is located in Colorado.

## FACTUAL ALLEGATIONS

7. Plaintiffs incorporate the allegations stated above.

8. Plaintiffs have owned their family home at 3145 East Yarrow Circle, Superior, CO 80027 (the "Home") since August 19, 2020.

9. On or around August 19, 2021, Defendant offered to sell Plaintiffs homeowners insurance for their Home in exchange for the payment of insurance premiums.

10. Plaintiffs accepted Defendant's offer, and paid their insurance premiums to Defendant.

11. Defendant issued to Plaintiffs Policy No. COH3212756696 (the "Policy"), effective August 19, 2021 to August 19, 2022, thus extending to Plaintiffs homeowners insurance coverage.

**The Marshall Fire**

12. On December 30, 2021, the most destructive wildfire in Colorado history blazed through eastern Boulder County.

13. Straight-line winds exceeding 110 miles per hour spread fire, smoke, ash, soot, and char throughout Louisville, Superior, and neighboring communities.



Photograph of the Marshall Fire taken on December 30, 2021 from Lookout Mountain in Golden, CO, approximately fifteen miles south of the Fire.

14. Over 30,000 Coloradans were forced to evacuate their homes.

15. The Boulder County Office of Emergency Management estimated that the Marshall Fire destroyed 1,084 homes.

16. Thousands more homes were penetrated by smoke, ash, soot, and char.

**Plaintiffs' Home**

17. Smoke from the Marshall Fire blanketed Plaintiffs' entire neighborhood.

18. Plaintiffs' Home was penetrated by smoke and fire particulate matter.

19. In particular, Plaintiffs' garage and its contents sustained extensive damage.

20. Plaintiffs opened an insurance claim with Defendant for the damage to their Home and its contents, for which Defendant assigned Plaintiffs Claim No. 1004-52-0016.

3

**Mr. Bouchard's Bicycles**

21. Mr. Bouchard is a full-time Software Engineer.

22. When Mr. Bouchard is not working his full-time job, he enjoys, among other activities, cycling.

23. Mr. Bouchard primarily uses his cycling equipment for "solo" rides, in and around Boulder County.

24. Mr. Bouchard is also a member of Avout Racing, Inc. ("Avout Racing"), a non-profit organization that organizes recreational cycling programs for adults and children.



Cover Photo on Avout Racing's Facebook Page.

25. According to Avout Racing's website: "Our mission is to enjoy riding and racing to the fullest while fostering camaraderie and achieving competitive excellence for both the team and individuals."

4

26. According to Avout Racing's Facebook page: "Avout Racing's mission is to have fun while riding and racing. That involves building team camaraderie, winning as a team and individually, and giving back to the community, all while being good stewards of the sport of cycling, the team's sponsors, and the planet as a whole."

27. Mr. Bouchard is a member of the Elite Team in Avout Racing's Adult Teams program, where he races recreationally.

28. Using his own money, Mr. Bouchard pays a registration fee each year to be part of the Adult Teams program.

29. Using his own money, Mr. Bouchard pays for his own transportation to each race.

30. Using his own money, Mr. Bouchard pays his own registration fee to enter each race.

31. Using his own money, Mr. Bouchard purchases his own cycling equipment.

32. When Mr. Bouchard wins a race, he does not receive any prize money.

33. At the end of each year, Avout Racing may award members of the Adult Teams program a nominal "Payback," up to $500.00.

34. In 2019, Mr. Bouchard received a "Payback" of $250.00.

35. In 2020, Mr. Bouchard received a "Payback" of $225.00.

36. In 2021, Mr. Bouchard received a "Payback" of $125.00.

37. The "Paybacks" that Mr. Bouchard receives are nominal. The costs associated with participating in the Adult Teams program, namely, registration fees, travel, and equipment, are significantly higher than any "Payback" Mr. Bouchard has ever received.

**The Insurance Claim**

38. Mr. Bouchard stores his cycling equipment in his garage.

39. During the Marshall Fire, the contents in Mr. Bouchard's garage, including his cycling equipment, became damaged by smoke and fire particulate matter.

40. The Policy provides:

**Coverage C – Personal Property**

**Covered Property**

We cover personal property owned or used by any "insured" while it is anywhere in the world.

…

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils . . .

    **1.**    **Fire Or Lightning**

    **2.**    **Windstorm Or Hail**

41. On March 14, 2022, Ms. Bouchard sent Defendant's claims adjuster, John St. Vrain ("Mr. St. Vrain"), an email explaining that Mr. Bouchard's cycling equipment, among other contents in the garage, was damaged by the Marshall Fire.

42. Ms. Boucard submitted to Mr. St. Vrain an inventory for, among other contents in the garage, Mr. Bouchard's cycling equipment, with the aggregate damage for Mr. Bouchard's cycling equipment totaling $34,303.00.

43. After Mr. St. Vrain asked Ms. Bouchard about the circumstances surrounding Mr. Bouchard's cycling activities, Ms. Bouchard explained that Mr. Bouchard races with

Avout Racing. Ms. Bouchard provided Mr. St. Vrain a link to the description of the Adult Teams program on Avout Racing's website.

44. On April 5, 2022, Mr. St. Vrain sent Ms. Bouchard an email explaining that Defendant would pay for the replacement of Plaintiffs' non-salvageable personal property, including contents in the garage, totaling $22,820.19.

45. With respect to Mr. Bouchard's cycling equipment, however, Mr. St. Vrain explained that Defendant would pay only $2,500.00 of the $34,303.00 claimed. Accordingly, Defendant denied the remaining $31,803.00 for Mr. Bouchard's cycling equipment.

46. Defendant did not deny the remaining $31,803.00 on the grounds that the cycling equipment was worth only $2,500.00.

47. Defendant did not deny the remaining $31,803.00 on the grounds that the cycling equipment did not need to be replaced.

48. Instead, Defendant denied the remaining $31,803.00 on the grounds that Mr. Boucahrd's cycling equipment was subject to a $2,500.00 special limit of liability because it was considered "business personal property."

49. The Policy provides:

**Special Limits of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category.

…

    h.    $2,500 on property, on the "residence premises", used primarily for "business" purposes.

…

7

"Business" means:

    a.    A trade, profession or occupation, whether or not engaged in for profit full time or part time; . . . or

…

    c.    Any other activity engaged in for money or other compensation, except the following:

        (1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

….

50. Mr. Bouchard, however, does not use his cycling equipment "primarily" for business purposes. He uses his cycling equipment recreationally, and "primarily" for "solo" rides in and around Boulder County.

51. Furthermore, racing is not Mr. Bouchard's trade, profession, or occupation. Mr. Bouchard is a full-time Software Engineer who races for fun in his free time.

52. Finally, the expenses Mr. Bouchard incurs to race recreationally with Avout Racing far exceed the nominal "Paybacks" he receives for his volunteer activities.

53. Accordingly, Ms. Bouchard responded to Mr. St. Vrain that they did not agree with Defendant's decision.

54. Ms. Bouchard explained to Mr. St. Vrain that any earnings Mr. Bouchard receives from Avout racing are less than the entry fees for most of the races he enters.

55. Ms. Bouchard explained to Mr. St. Vrain that Mr. Bouchard does not profit from his sport/hobby.

56. Ms. Bouchard offered to provide Mr. St. Vrain with financial information concerning the "Paybacks" Mr. Bouchard receives from Avout Racing.

8

57. On April 6, 2022, Mr. St. Vrain thanked Ms. Bouchard for the additional information and told her he would review it with his manager.

58. Defendant never requested additional information.

59. Defendant never asked to speak with Mr. Bouchard.

60. Defendant conducted no further investigation.

61. Instead, on April 20, 2022, Mr. St. Vrain emailed Ms. Bouchard informing her that Defendant was standing by its position. Mr. St. Vrain told Ms. Bouchard that her husband's cycling equipment was considered "business personal property."

62. On September 30, 2022, Mr. Bouchard submitted to Defendant an affidavit he attested to describing in detail (1) how he uses his cycling equipment, and (2) the circumstances regarding his involvement with Avout Racing. *See supra* ¶¶ 21-37.

63. Defendant never requested additional information.

64. Defendant never asked to speak with Mr. Bouchard.

65. Defendant conducted no further investigation.

66. Instead, on October 4, 2022, Defendant issued a letter stating: "In investigating the cause of damages and after conducting a review of the file along with the member's affidavit, it was determined that the member uses his bike with Avout Racing. Per the member's homeowner's policy under define this as business equipment [sic]."

67. Mr. Bouchard's cycling equipment is not "business personal property" or "business equipment." Mr. Bouchard's cycling equipment is personal property not subject to any special limit of liability.

9

68. Defendant's application of the business property special limit of liability, and denial of $31,803.00 for the remaining value of Mr. Bouchard's cycling equipment, was incorrect, and ultimately, without a reasonable basis.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

69. Plaintiffs incorporate the allegations stated above.

70. Plaintiffs and Defendant entered into a contract of insurance.

71. Plaintiffs performed on the contract of insurance by paying insurance premiums to Defendant, and complying with all material duties under the Policy.

72. Defendant breached the contract of insurance by failing to pay all covered benefits due and owing to Plaintiffs under the Policy.

73. Because of Defendant's breach, Plaintiffs have incurred damages for covered insurance benefits due and owing under the Policy, in an amount not less than $31,803.00 ($34,303.00 owed – $2,500.00 paid).

### SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115)

74. Plaintiffs incorporate the allegations stated above.

75. Defendant is engaged in the business of insurance.

76. Under the Policy, Defendant owes insurance benefits to Plaintiffs.

77. Defendant denied payment of covered insurance benefits owed to Plaintiffs.

78. In denying payment of covered insurance benefits owed to Plaintiffs, Defendant engaged in acts and/or omissions that violate industry standards, including, but not limited to:

      a.    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

      b.    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

      c.    Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; and

      d.    Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

79.    Defendant's denial of covered insurance benefits owed to Plaintiffs was and continues to be without a reasonable basis.

80.    Under C.R.S. § 10-3-1116, Plaintiffs are entitled to recover from Defendant two times the covered benefit that Defendant unreasonably denied, in an amount not less than $63,606.00 ($31,803.00 x 2), in addition to their damages for Breach of Contract ($31,803.00) ($95,409.00 total). Plaintiffs are entitled to recover their costs and reasonable attorney fees.

## PRAYER FOR RELIEF

Plaintiffs Brian Paul Bouchard and Milena Queiroz Bouchard respectfully request this Court enter judgment in their favor and against Defendant CSAA General Insurance Company, and award Plaintiffs their actual damages, statutory damages, pre- and -post judgment interest, costs, and reasonable attorney fees.

## PLAINTIFFS DEMAND A TRIAL BY JURY

Respectfully submitted November 28, 2022.

        HENNESSY PLLC

        */s/ Stephen H. Hennessy*
        Stephen H. Hennessy, Esq.
        4450 Arapahoe Ave. Ste. 100
        Boulder, CO 80303
        (303) 630-9169
        shennessy@hennessypllc.com

        *Counsel for Plaintiffs Brian Paul Bouchard and Milena Queiroz Bouchard*

12